UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASMIN C. DELIZO,
ERLINDA A. SAMANIEGO, and
ALAIN P. UNSON,

       Plaintiffs,                                Case No.
                                                            Hon.

vs.

ABILITY WORKS REHAB
SERVICES, LLC, a Michigan
limited liability company,

       Defendant.
_____/
Raymond J. Sterling (P34456)
Brian J. Farrar (P79404)
Attorneys for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
bfarrar@sterlingattorneys.com
_____/

## COMPLAINT AND JURY DEMAND

      Plaintiffs Jasmin C. Delizo, Erlinda A. Samaniego, and Alain P. Unson, by their attorneys, Sterling Attorneys at Law, P.C., for their Complaint against defendant, Ability Works Rehab Services, LLC, state as follows:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff Jasmin C. Delizo is a citizen of the Philippines and a legal permanent resident of the United States, residing in Oakland County, Michigan.

2. Plaintiff Erlinda A. Samaniego is a citizen of the Philippines and a legal permanent resident of the United States, residing in Oakland County, Michigan.

3. Plaintiff Alain P. Unson is a citizen of the Philippines and a legal permanent resident of the United States, residing in Oakland County, Michigan.

4. Plaintiffs are current employees of defendant.

5. Defendant is a Michigan limited liability company with its principal place of business in Farmington Hills, Michigan.

6. Upon information and belief, defendant is solely owned by Hitesh V. Khatri.

7. Defendant is a health care services provider that operates in Michigan, California, Texas, Illinois, and New York.

8. Defendant is an "employer" as defined by the Fair Labor Standards Act, 29 USC 203(d).

9. This Court has federal question jurisdiction under 28 USC 1331 because this action arises under the laws of the United States.

10. This Court has supplemental jurisdiction over plaintiffs' state law claims under 28 USC 1367(a).

11.  Venue is proper under 18 USC 1391(a)(2) and (b)(2) because the events giving rise to this controversy occurred in this district.

## GENERAL ALLEGATIONS

### Defendant recruited plaintiffs to work in the U.S. as registered nurses but refused to pay them

12.  Plaintiffs are registered nurses licensed to practice in Michigan.

13.  Beginning in 2016, defendant recruited plaintiffs to move from the Philippines to work for defendant in Michigan as registered nurses.

14.  On or about August 23, 2016, plaintiff Unson and defendant entered into a three-year employment agreement wherein plaintiff agreed to work for defendant as a registered nurse in exchange for an annual salary of at least $61,500, plus benefits (attached as **Exhibit A**).

15.  On or about April 24, 2017, plaintiff Samaniego and defendant entered into a three-year employment agreement wherein plaintiff agreed to work for defendant as a registered nurse in exchange for an annual salary of at least $61,500, plus benefits (attached as **Exhibit B**).

16.  On or about July 14, 2017, plaintiff Delizo and defendant entered into a three-year employment agreement wherein plaintiff agreed to work for defendant as a registered nurse in exchange for an annual salary of least $61,500, plus benefits (attached as **Exhibit C**).

17. The employment agreements were prepared entirely by defendant and plaintiffs were not involved in drafting them.

### When plaintiffs arrived to the U.S., defendant forced plaintiffs to work for two months without any compensation

18. Plaintiff Unson arrived to the U.S. on or about February 23, 2018 and began working for defendant on April 16, 2018.

19. From April 16, 2018 until June 4, 2018, defendant ordered plaintiff Unson to report to its Farmington Hills office five days a week and do mandatory training from approximately 9:00 a.m. until 5:30 p.m.

20. Plaintiff Samaniego arrived to the U.S. on April 10, 2018 and began working for defendant on April 11, 2018.

21. From April 11, 2018 until June 14, 2018, defendant ordered plaintiff Samaniego to report to its Farmington Hills office five days a week and do mandatory training from approximately 9:00 a.m. until 5:30 p.m.

22. Plaintiff Delizo arrived to the U.S. in July 18, 2018 and began working for defendant on August 15, 2018.

23. From August 15, 2018 until October 15, 2018, defendant ordered plaintiff Delizo to report to its Farmington Hills office five days a week to do mandatory training from approximately 9:00 a.m. until 5:30 p.m.

24. Although plaintiffs all completed this mandatory training at defendant's office, defendant never paid plaintiffs for their time.

### After plaintiffs completed their training, defendant refused to pay plaintiffs a salary as required under their contracts

25. Defendant falsely stated to immigration officials at the U.S. embassy in Manila, Philippines that defendant would pay plaintiffs a salary of at least $67,000 a year.

26. Instead of paying the agreed upon salary, defendant unilaterally changed plaintiffs' employment status from salary to a fee-basis after plaintiffs arrived in the U.S.

27. Under the new payment scheme, defendant paid plaintiffs a flat fee for each patient plaintiffs saw.

28. Defendant paid plaintiffs $55 for every new patient they saw and $40 for each follow-up visit.

29. In order to receive this flat fee, plaintiffs are required to travel to and from each patient's home on their own dime, and prepare necessary paperwork, including Medicare paperwork.

30. As a result, it takes plaintiffs on average 3-6 hours of work to complete a single patient visit.

31. From approximately June 2018 until the present, plaintiffs Unson and Samaniego typically worked between 50 and 70 hours per week.

32. From approximately October 2018 until the present, plaintiff Delizo typically worked between 50 and 70 hours per week.

33. These work hours include time spent in patients' homes, traveling to and from patients, completing necessary paperwork, and charting patient visits.

34. Most of the time spent on these tasks was not recorded or visible on plaintiffs' paychecks.

35. Due to this pay scheme, plaintiffs earn significantly less wages than guaranteed under their contracts, and in some instances, below the state minimum wage of $9.25 an hour.

**Defendant's payment scheme violates the Fair Labor Standards Act**

36. The Fair Labor Standards Act (FLSA) allows an employer to pay employees on a fee-basis provided that it meets both the duties test and salary level tests.

37. In order to satisfy the salary level test, the employer must pay the employee the equivalent of $455 a week based on 40 hours of work.

38. Pursuant to the FLSA, an employer that cannot satisfy the salary level test must pay its employees overtime premium compensation for hours worked over 40 in a week at a rate of 1.5 times their hourly rate.

39. Defendant fails to meet the salary level test because it does not guarantee plaintiffs a minimum of $455 a week based on 40 hours of work.

40. In reality, plaintiffs are required to work in excess of 40 hours a week to meet the statutory weekly minimum under the FLSA.

41. Defendant is aware that plaintiffs routinely work more than 40 hours per week based on the number of patients that plaintiffs visit in a week, the travel distances between the patients' homes, and the amount of paperwork plaintiffs are required to prepare for each patient.

42. Defendant failed to pay plaintiffs overtime premium compensation for hours worked over 40 in a week.

43. By failing to pay plaintiffs overtime premium compensation for hours worked over 40 in a week, defendant has violated the FLSA.

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

44. Plaintiffs incorporate the preceding paragraphs by reference.

45. Plaintiffs are non-exempt employees under the Fair Labor Standards Act because they are not compensated on a salary or fee basis of at least $455 a week based on 40 hours of work. 29 USC 213; 29 CFR 541.600(a).

46. Defendant is an employer covered by the FLSA.

47. Plaintiffs regularly work in excess of 40 hours per week.

48. Defendant is aware that plaintiffs regularly work in excess of 40 hours per week.

49. Defendant failed to pay plaintiffs at the rate of one-and-a-half times their hourly wage for hours worked in excess of 40 hours per week as required by the Fair Labor Standards Act. 29 USC 207(a).

50. Defendant willfully and intentionally refused to pay its employees compensation for hours worked in excess of 40 hours per week, regardless of exempt or non-exempt status.

51. Defendant willfully and intentionally refused to pay plaintiffs for training time as required under the FLSA.

52. Plaintiffs are also entitled to an award of reasonable attorney fees and costs pursuant to 29 USC 216(b).

## COUNT II

## BREACH OF CONTRACT

53. Plaintiffs incorporate the preceding paragraphs by reference.

54. Plaintiffs and defendant entered into employment contracts that guaranteed each plaintiff an annual salary of at least $61,500 plus benefits.

55. Plaintiffs performed their obligations under the employment contracts at all relevant times.

56. Defendant breached the contracts by not complying with its obligations and by failing and refusing to pay plaintiffs the compensation owed to them.

57. As a direct and proximate result of defendant's breach of contract, plaintiffs have suffered and will continue to suffer lost compensation and other incidental and consequential damages, including attorney fees.

## COUNT III

## QUANTUM MERUIT / UNJUST ENRICHMENT

58. Plaintiffs incorporate the preceding paragraphs by reference.

59. Under the doctrine of *quantum meruit*, defendant reaped an unfair benefit by failing to pay each plaintiff the agreed-upon salary of $61,500 per year and/or overtime as required under the FLSA.

60. Inequity and injustice will result if defendant retains the benefit of plaintiffs' work without properly compensating plaintiffs for their efforts.

61. As a direct and proximate result of defendant's breach of contract, plaintiffs have suffered and will continue to suffer lost compensation and other incidental and consequential damages, including attorney fees.

## COUNT IV

## PROMISSORY ESTOPPEL

62. Plaintiffs incorporate the preceding paragraphs by reference.

63. Defendant made a promise to plaintiffs that it would pay them each an annual salary of $61,500.

64. Defendant made this promise to plaintiffs in order to secure their talent, knowledge, and skills to further defendant's business.

65. Defendant knew that plaintiffs would rely upon this promise when deciding whether to move, along with their families, from the Philippines to the U.S. to work for defendant.

66. Plaintiffs reasonably relied on defendant's promise.

67. Plaintiffs suffered an inequitable financial loss when defendant broke its promise and refused to pay plaintiffs their promised salaries.

68. As a direct and proximate result of defendant's conduct, plaintiffs have suffered and will continue to suffer lost compensation and other incidental and consequential damages, including attorney fees.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter judgment against defendant in whatever amount plaintiffs are found to be entitled, together with incidental and consequential damages, costs, interest as an element of damages, statutory interest, and attorney fees.

### JURY DEMAND

Plaintiffs Jasmin C. Delizo, Erlinda A. Samaniego, and Alain P. Unson, by their attorneys, Sterling Attorneys at Law, P.C., request a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By: /s/Brian J. Farrar
Raymond J. Sterling (P34456)
Brian J. Farrar (P79404)
Attorneys for Plaintiffs
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

Dated: January 23, 2019