UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMIN C. DELIZO,
ERLINDA A. SAMANIEGO, and
ALAIN P. UNSON,

      Plaintiffs/Counter-Defendants,      Case No. 2:19-cv-10237
                                                       Hon. Mark A. Goldsmith

vs.

ABILITY WORKS REHAB
SERVICES, LLC, a Michigan limited liability company,
      Defendant/Counter-Plaintiff.

| Raymond J. Sterling (P34456) | Danielle B. Safran (P61965) |
|---|---|
| Brian J. Farrar (P79404) | Attorney for Defendant |
| Attorneys for Plaintiffs | The Sigler Law Firm, P.L. C. |
| 33 Bloomfield Hills Pkwy., Ste. 250 | 30300 Northwestern Hwy., Ste. 337 |
| Bloomfield Hills, MI 48304 | Farmington Hills, MI 48334 |
| (248) 644-1500 | (248) 932-3500 |
| bfarrar@sterlingattorneys.com | safranlaw1@gmail.com |

**<u>DEFENDANT'S BRIEF IN REPLY TO PLAINTIFFS' ANSWER TO DEFENDANT'S REVISED MOTION FOR SUMMARY JUDGMENT, COUNTER AND ADDITIONAL STATEMENTS OF MATERIAL FACT</u>**

      NOW COMES Defendant, by and through its attorneys, The Sigler Law Firm, PLC., pursuant to Fed. Rule Civ. Proc. 56, submits the following reply to Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Counter Statement of Material Facts and Additional Statement of Material Facts.

      **I.    DEFENDANT'S REPLY TO COUNTER/ADDITIONAL STATEMENTS OF FACT**

As a threshold matter, Defendant disputes Plaintiffs' Counter-Statement of Material Facts *(ECF No. 23 pp. 8-18)* and Additional "Material" Facts *(ECF No. 23 pp. 18-22)* to the extent such are incomplete or lacking context and hence mischaracterize

the "facts" they purport to state. Furthermore, Plaintiffs' fail to explain the basis for the factual disagreement, lack adequate references and cite to the record evidence as required by this Court. Nothing herein shall be deemed an admission of truth, materiality, or admissibility of any statement for any other purpose.

Additionally, Plaintiffs' Counter Statement of Material Facts and Additional Material Facts primarily rely on Declarations that directly contradict Plaintiffs' deposition testimony, emails, texts, medical records and other contemporaneous communications, records and documentation and are solely intended to confuse this Court into believing there are "genuine issues" of material facts in effort to thwart Defendant's Summary Judgment Motion. *(See ECF No. 23 pp. 8-18*)

### A. DEFENDANT'S REPLY TO COUNTER STATEMENT OF MATERIAL FACTS

<u>Material Fact ¶20</u>: Prerequisite: Plaintiffs were aware they had to obtain a valid Michigan RN license as a condition of employment with Defendant prior to flying to the US; despite Plaintiffs' declarations to the contrary. *(ECF No. 21, p. 11 ¶20; ECF Nos. 19-6, 19-7, 19-24 Employment Agreements I.B p.1)* This was also reiterated by Defendant's HR before Plaintiffs left the Philippines. (*ECF No. 19-3, pp. 22-23, 26, 404-405; ECF No. 19-22 p. 3)*. Plaintiffs' contest ¶20 and cites Ex. G without reference to specific paragraphs and/or factual basis or explanation. *(ECF No. 23 p. 11 ¶20)*

<u>Material Fact ¶50</u>: Overtime. It is clear from the record that Plaintiffs did not work over 40 hours per week. *(ECF No. 21 pp. 5-6 ¶20; See ECF No. 19-3 p. 81-82, 112-113, 331 vs. ECF No. 23-9 ¶18, 25, 29; ECF No. 19-8 pp. 327-328 vs. ECF No. 23-*

*10 ¶15; ECF Nos. 19-28, 19-31, 19-32 Patient Visits and ECF No. 19-34 p. 50, 148-150 vs. ECF No. 23-8 ¶15, 16, 18)* Samaniego testified she was **"not allowed" to work over 40 hours per week** per her Department of Labor web search so she stayed within the forty hours per week she believed was permitted; which contradicts her declaration that states she worked overtime hours during her entire employment. *(ECF No. 19-34 p. 50; ECF No. 23-8 ¶15, 16, 18)* Unson's declaration is also disingenuous as he testified that he worked only 40 hours a week and did not notify Defendant that he worked in excess of 40 hours. *(ECF No. 19-3 pp. 81-82, 112-113, 331 vs. ECF No. 23-9 ¶29, 17, 18 and 25)* Plaintiffs' admit they did not notify Defendant that they worked over forty hours a week nor did they complain that they were not paid overtime wages as required. (See **Requests to Admit: #4**: E*CF Nos. 19-3 p. 101-103, 112-113, **448**; 19-8 p. **410**; ECF No. 19-34 pp. 81, 197-198, 242-244, **303**; ECF Nos. 19-6 and 19-7 Agreements Ex. A, p.2 and p.12; ECF 19-9, Khatri Dep. p. 302; ECF No. 19-24 p. 17; ECF Nos. 19-44, 19-45 19-46 Payroll)*.

<u>Material Fact</u> ¶52: Defendant required Plaintiffs provide weekly timesheets with detailed allocations of time Plaintiffs spent working during their employment; Plaintiffs refused. *(ECF No. 21 p. 10 ¶52; ECF Nos. 23-8, 23-9 and 23-10 ¶17-18)* "The time-sheet must set forth in detail the exact time Employee began and ended work each day. Employee must record all hours worked." *(ECF Nos. 19-6, 19-7, 19-24 Agreements p. 12)* Plaintiffs contest ¶52, inaccurately stating time allocation

sheets were not required until lawsuit was filed. *(ECF No. 23, p.14; ECF No. 19-43)*

Material Fact ¶61: Productivity. Plaintiffs response failed to address the material fact related to Plaintiffs productivity and merely respond Plaintiffs worked 40 hours per week, citing declarations without specificity. *(ECF No. 21 p. 12 ¶61; ECF No. 23 p. 16)* Plaintiffs failed to fully and clearly respond to Defendant's Statements of Material Facts as a red herring attempt to manifest issues of "material" fact as evident in responses to Material Facts ¶25, 26, 35, 36, 44, 49, 50, 51, 60. Plaintiffs' responses to these statements of fact are vague, limited, do not fully respond and/or set forth the factual basis for any contested issues. Defendant argues these material facts should be deemed admitted by Plaintiff for this Motion. *(ECF No. 23 p. 11-15)*

Material Fact ¶38, 50, 62, 65-76 and 84: In attempt to deceive this Court into finding in its favor, Plaintiffs filed deficient Counter Statements of Material Fact. This is especially clear in responses to ¶20, 38, 50, 62, 65-76 and 84 which solely rely on Plaintiffs' Declarations; despite contradictory deposition testimony, and fail to explain any basis for factual disagreement. *(ECF No. 21 p. 13-16 ¶65-76; ECF No. 23, pp. 8-18)*. Therefore, Defendant argues the aforementioned material facts should also be deemed admitted by Plaintiff for purposes of this Motion.

**B. DEFENDANT'S REPLY TO ADDITIONAL STATEMENT OF MATERIAL FACTS**
1. Not controverted as Plaintiff references the August 23, 2016 Employment Agreement; which was terminated by the parties prior to its effective date (Plaintiff's first day of work) when the parties negotiated a Revised Employment Agreement in February 2018.

It is uncontested that the revised February 2018 agreement never went into effect.[1] (*ECF No. 19-22 pp. 3-6; ECF No. 19-24 pp. 1, 5-6; ECF No. 19-3 pp. 127-141; 154, 157-158; 402-408; ECF No. 23 ¶8 pp. 8-9)*

    2.     Not controverted. *See answer 1 above.*

    3.     Not controverted. *See answer 1 above.*

    4.     Not controverted.

    5.     Controverted. Defendant had no contract in place with Plaintiff Unson "guaranteeing a salary of $61,500" in April 2018. Unson did enter into a Restrictive Covenant and Non-Compete Agreement on April 16, 2018. (ECF No. 19-5 pp. 7-10; *ECF No. 19-22, Unson Emails p. 3-6; ECF No. 19-24 pp. 5-6, 7-27).*

    6.     Not controverted as set forth; Plaintiffs failed to include all terms of the compensation plan; including that which permits compensation on a per visit rate as follows:

Ability Works Rehab Services, LLC reserves the right to **determine the method of compensation** …Ability Works Rehab Services, LLC **shall compensate Employee** for performing Employee's obligations under the Employment Agreement **either at a per visit rate, or hourly rate, or at an equivalent salary basis**…(ECF Nos. *19-6 and 19-7 Agreements Exhibit A, p.11; ECF No. 19-24 Revised Agreement p. 17)*

Plaintiffs were informed as to the method of compensation before they arrived in the US; yet, Plaintiffs did not notify Defendant in writing that it was a potential breach of their Agreement, as required, and subsequently reported for work. Plaintiffs were

---

[1] While the parties may disagree on why the revised agreement was not effectuated, the material facts here are that the Parties voluntarily terminated the 2016 Agreement and did not enter into the 2018 revised agreement.

paid on a fee basis which was equivalent to the salary set forth in the Agreement, subject to performance metrics; no other documents altered this agreement. (*ECF No. 19-3 pp. 101, 113-119, 157-158, 166, 389; ECF No. 19-8 pp. 152; ECF No. 19-9 pp. 109, 154-155, 157-158, 205; ECF No. 19-22 p.3-6; ECF 19-23 p. 13; ECF No. 19-24 pp. 5-6, 7-27; ECF No. 19-25 ¶9-12, 24, 32-33; ECF No. 19-26, ¶5-11; ECF No. 19-27; ECF No. 19-34 p. 110).*

7. See answer to 6 above.

8. Controverted. While Defendant's agents drafted the Agreements; Unson negotiated the terms of his Agreement in February 2018 which was revised accordingly. (*ECF No. 19-8 p. 157; ECF No. 19-22; ECF No. 19-24 pp. 1, 5-6).*

9. Not Controverted.

10. Controverted; *see explanation answer 9 above.*

11. Not controverted that Defendant intended on compensating Plaintiffs at a salary equivalent of $61,500 per year utilizing a pay per visit method of compensation. (*ECF Nos. 19-6 & 19-7 ¶1.6; ECF No. 19-8 pp. 152-153; ECF No. 19-9 pp. 109, 154-155, 157-158; ECF No. 19-23 p. 13; ECF No. 19-25 ¶9-12, 24,32-33; ECF No. 19-26 ¶5-11; ECF No. 19-27 ¶23-24; ECF No. 21 pp. 39-40)*

12. Controverted; Defendant intended to provide an estimate of what Plaintiffs would earn annually, provided performance metrics were met/maintained. The immigration documentation requires compensation to be set forth in hourly or salary

format; there was no way to indicate per visit methods. Therefore, such was computed by setting forth a salary equivalent. (*ECF No. 19-25 ¶9-12; ECF No. 19-26 ¶5-7*)

13. Not controverted subject to *additional clarification set forth in 11-12 above.*

14. Not controverted subject to *additional clarification set forth in 11-12 above.*

15. Not controverted subject to *additional clarification set forth in 11-12 above.*

16. Not controverted subject to *additional clarification set forth in 11-12 above.*

17. Not controverted; terms of employment were set forth in the Plaintiffs' Agreements and Employee Handbook. Plaintiffs were paid per patient visit at the salary equivalent provided to immigration. (*ECF Nos. 19-6 & 19-7 ¶1.6; ECF No. 19-8 p. 152-153; ECF No. 19-9 pp. 109, 154-155, 157-158; ECF No. 19-23 p. 13; ECF No. 19-25 ¶9-12, 24,32-33; ECF No. 19-26 ¶5-11; ECF No. 19-27, ¶ 23-24*)

18. Controverted; it is uncontested that each Plaintiff received an Employee Handbook which sets forth performance metrics for Plaintiffs' positions and is incorporated by reference in the Agreements. (See *ECF Nos. 19-6 and 19-7 ¶1.6; ECF No. 19-9 pp. 109, 154-155, 157-158; ECF No. 19-23 p. 8 ¶5, 13; ECF No. 19-25 ¶9-12, 24,32-33; ECF No. 19-26 ¶5-11; ECF No. 19-27 ¶23-24*)

19. Not controverted as stated; however, Defendant did inform Plaintiffs of such during interview processes. *(ECF No. 19-25, Affidavit Khatri ¶5-7)*

20. Not controverted as stated; however, Defendant did inform Plaintiffs of such during interview processes. *(ECF No. 19-25, Affidavit Khatri ¶5-7)*

21. Controverted. Plaintiffs were informed such prior to their arrival in US. *Plaintiffs' exhibits* prove Plaintiffs knew they were required preform RN duties in patients' Oakland, Wayne and Macomb County residences. (*see ECF Nos. 23-14, 23-15, 23-16; ECF No. 19-3 pp. 139, 141-142, 171-172; ECF No. 19-8 pp. 152-153; ECF No. 19-9 pp. 272-274; 277; ECF No. 19-25 ¶5-7; ECF No. 19-22 pp. 3-4*)

22. Controverted. Plaintiff Delizo identified mandatory training with Defendant as consisting of shadowing another nurse for less than an hour, having the owner train on software for less than two hours and OASIS training for approximately 4 hours; which is consistent with the standard in the nursing industry. No other training was expected or required by Defendant; Plaintiffs were not required to come to Defendant's office until prerequisites were completed and they were able to visit patients. (*ECF No. 19-3 pp. 99-109, 168-171, 174, 179;* ECF No. 19-8 pp. 131-135, 216-217, 221, 228-230*; ECF No. 19-9 pp. 134-135, 141-151,* 266-274, 272-274*; ECF No. 19-25 ¶10-13; ECF No. 19-27 ¶10-13;ECF No. 19-32 pp. 117-135; ECF No. 19-34 pp. 117-135;* ECF No. 19-38 *Train I: 1 Hr. 27 Min. 1I: 2 Hrs. 13 Min.).*

23. Controverted. *See answer to 22 above.*

24. Controverted. Plaintiffs were not in the office daily at those times; Plaintiffs identified several errands, personal and those tied to accomplishment of their prerequisites that they went on during this "training" time. Plaintiffs were unable to ascertain how often these "breaks" occurred during at their depositions; despite declarations now stating breaks

were "occasional*.*" *(ECF No. 19-3 pp. 99-109, 168-171, 174, 179; ECF No. 19-8 pp. 131-135, 216-217, 221, 228-230; ECF No. 19-27 ¶10-13; ECF No. 19-34 pp. 117-135).*

25. Not controverted as stated; however, per Plaintiffs, shadowing only took a half to one day. *(ECF No. 19-3, p. 180; ECF No. 19-8 p. 131; ECF No. 19-34 p. 79)*

26. Not controverted.

27. Not controverted; Plaintiffs did not successfully complete probationary period. *(ECF Nos. 19-5 p.1; 19-6, 19-7 p.12; 19-9 pp. 147-151;19-27 ¶10-11)*

28. Not controverted. *(See ECF Nos. 19-6, 19-7, 19-24 p. 12)*

29. Controverted. Plaintiffs knew, prior to arriving in the US and prior to the effective date of their Employment Agreements, they would be paid a flat fee per patient visit. It is undisputed that Plaintiffs were previously earning $7,100-9,600 ANNUALLY while working forty hours per week in the Philippines. *(ECF No. 19-3 pp. 157-158; ECF No. 19-8 pp. 152-153; ECF No. 19-28, Naik Affid. ¶5-6; ECF Nos. 19-5 ¶3 p. 2, 19-6 & 19-7 pp. 6, 11; ECF No. 19-24 pp. 12, 17; See ECF 23 ¶18)*

Based on the foregoing, Defendant respectfully requests that this Court find there is no genuine issue of material fact and grant Defendant's Motion in its entirety.

## II. LEGAL ANALYSIS

As shown in §I above, the majority of Plaintiffs' cited materials are mere denials of Defendant's pleadings and do not establish the presence of a genuine factual dispute**;** rather Plaintiffs cited declarations evidence inconsistencies between

9

deposition testimony, medical records, written correspondence, recordings and sworn documentation.

Plaintiff, as the nonmoving party, must establish more than some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986*). InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 110-11 (6th Cir.1989). Rather, Plaintiffs must establish a genuine issue with specific facts and affirmative evidence; they "may not rest upon mere allegations or denials of [its] pleading;" yet this is exactly what Plaintiffs attempt in defense of this matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986). Therefore, Summary Judgment is warranted.

### A. LEARNED PROFESSIONALS EXEMPT FROM FLSA

Persons employed in a bona fide professional capacity are exempt from the overtime pay requirements set forth in the Fair Labor Standards Act. *29 U.S.C. § 207(a) (1; 29 U.S.C. § 213(a) (1)*. (*See ECF No. 2 pp.36-40)* Plaintiffs do not dispute that Plaintiffs meet the definition for Learned Professionals pursuant to FLSA or that their duties are unique; rather, they only question whether the salary level test of at least $455 per week is met. *(See ECF No. 23 p. 15 ¶58-59 and p. 26)*

The Court in *Fazekas; which is factually similar to the case at hand,* held plaintiffs, who were also home healthcare nurses paid a comparable fixed rate per

patient visit[2], were learned professionals compensated on a fee basis and exempt from FLSA. *Fazekas v. The Cleveland Clinic Foundation Health Care Ventures, Inc.,* 204 F.3d 673 (6th Cir. 2000)(*See ECF No. 21 pp.36-40)* Similarly here, Plaintiffs were compensated a flat fee for each patient visit, regardless of the time spent for its completion, including all associated duties (medical documentation, etc.); the fee did not vary based on total hours worked by Plaintiffs which, according to *Fazekas,* properly meets the fee basis standard. *Id.* Furthermore, the Plaintiffs agreements provided for compensation on a fee basis, therefore, the salary level test is met in this matter. (*ECF Nos. 19-6 and 19-7 ¶1.1(F) and 1.1(I); ECF No. 19-27, Affidavit ¶22-25; ECF No. 21 ¶14; ECF No. 23 p. 9-10 ¶14)*

Plaintiffs misinterpreted the law by alleging Defendant must have compensated Plaintiffs at least $455 per week. In fact, "[t]o determine whether the fee payment meets the minimum amount of salary required for exemption under these regulations, the amount paid to the employee will be tested by determining the *time worked on the job* and whether the fee payment is at a *rate that would amount to at least the minimum salary per week*, as required by §§541.600(a) and 541.602(a), **if the employee worked 40 hours**." 29 C.F.R §541.605(b). Here, Payroll Reports clearly illustrate Plaintiffs did not work 80 hours during any two-week payroll period

---

[2] *Fazekas* Plaintiffs earned $30/$50 per patient revisit/new patient visit while the Plaintiffs in this case earned $40/$55 per patient revisit/new patient visit.

11

during their employment with Defendant. *(ECF Nos. 19-44; 19-45; 19-46 Payroll)* Plaintiffs were responsible for notifying Defendant immediately if they disputed the hours set forth on their paychecks; however, it is uncontested that no such disputes were filed. *(ECF No. 19-3, Unson Dep. pp. 101-103; ECF Nos. 19-6 & 19-7 p. 12; 19-24 Unson Revised Agreement p. 17; ECF No. 23 p. 15 ¶55)* In addition to not reporting any error on their payroll, Plaintiffs refused to provide allocations of time worked as requested and required in their Employment Agreements. *(ECF 19-3 p. 112-113, 448; ECF Nos. 19-6 and 19-7 Agreements Ex. A, p.2; ECF No. 19-8 p. 410; ECF No. 19-9 p. 302; ECF No. 19-34 pp. 81, 197-198, 242-244, 303)*

Additionally, it is clear from Plaintiffs' availability, denial of patient referrals and productivity that Plaintiffs did not work 40 hours per week for Defendant. *(ECF 21 pp. 29-32 and FN 42-43; ECF No. 19-8 p. 114-116; ECF No. 19-17; ECF Nos. 19-28, 19-31, 19-32 Plaintiffs' Patient Visits; ECF No. 19-39 pp. 36, 65; ECF No. 19-48, Time Allocation Records)* Therefore, Plaintiffs did not earn over $455/week because they did not work 40 hours per week during their employment.

Taking the evidence in the light most favorable to the Plaintiffs, Defendant computed the salary level test based on a 40-hour work week utilizing the average amount of time *Plaintiffs testified* they spent performing each of their job duties during their employment. *(See ECF No. 21, SJ Motion pp. 40)* It is clear from this calculation as well as the ruling in *Fazekas* that the salary level test of at least $455

per week is met in this matter; regardless of whether Plaintiffs actually earned that amount. *(See ECF No. 21, SJ Motion pp. 36-40)*

Thus, based on the foregoing, it is clear the compensation plan in this matter meets the salary level test. *(See ECF No. 21 pp. 36-40; ECF Nos. 19-28, 19-31, 19-32, Plaintiffs' Patient Visits; ECF No. 19-48, Time Allocation Records)* As a result, Plaintiffs are "Learned Professionals" exempt from FLSA overtime requirements and training pay as set forth herein. Defendant is entitled to judgment as a matter of law that Plaintiffs are learned professionals exempt from FLSA overtime requirements and training pay. (*See ECF No. 21, SJ Motion pp.36-40)*.

### B. DEFENDANT DID NOT BREACH THE PARTIES' CONTRACT

To recover for its Breach of Contract claims, it is well established that Plaintiffs must prove the parties had an enforceable agreement, the terms of the agreement required performance of some actions, Defendant breached the agreement and the breach resulted in damages or injury to Plaintiffs.

Defendant has established Plaintiff Unson did not have an agreement in force during his employment. *See §IB(1-6) above.* While the parties did originally enter into an Employment Agreement in 2016, it was outdated by the time Unson received his green card in 2018; therefore, the 2016 agreement was mutually terminated prior to its effective date when the parties negotiated a revised agreement. However, Unson did not provide a signed copy of this revised agreement to Defendant. *(ECF No. 19-22, Unson Emails; ECF No. 19-24, Revised Agreement pp. 1, 5-27).*

Thus, as of approximately June 2018, Unson was an at-will employee of Defendant, earning a flat fee per patient visit in exchange for performance of home healthcare nursing duties for Defendant's clients' patients and meeting and maintaining performance metrics set forth in the Employee Handbook. *(ECF No. 19-5; ECF No. 19-22, Unson Emails; ECF No. 19-23; ECF No. 19-24, Unson Revised pp. 1, 5-27).*

Although Delizo and Samaniego had valid employment agreements in force during their employment, a change in compensation method was permitted in this agreement and thus, did not constitute a breach. *(See §IB above Material Facts ¶6-12; ECF Nos. 19-6 & 19-7 ¶1.6 and Ex. A pp. 11-12; ECF No. 19-8 pp. 152-153; ECF No. 19-9 pp. 109, 154-155, 157-158; ECF No. 19-23 p. 13; ECF No. 19-25 ¶9-12, 24,32-33; ECF No. 19-26 ¶5-11; ECF No. 19-27 ¶23-24)* In fact, it is uncontroverted that Plaintiffs did not notify Defendant of any potential breach in writing, as required; instead, they reported for work and preformed patient visits for months. *(See §IB above ¶6-12; ECF Nos. 19-6 & 19-7 ¶1.6; ECF No. 19-8 pp. 152-153; ECF No. 19-9 pp. 109, 154-155, 157-158; ECF No. 19-23 p. 13; ECF No. 19-25 ¶9-12, 24,32-33; ECF No. 19-26 ¶5-11; ECF No. 19-27 ¶23-24)* This Court does not have the duty to search the record for such evidence rather Plaintiffs must present "concrete evidence supporting its claims" which they have failed to do in this matter. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 110-11 (6th Cir.1989).

Assuming arguendo that Plaintiffs could establish Defendant breached the contract with Defendants by compensating them per patient visit, Plaintiffs substantially breached the parties' agreement by failing to report to work promptly with the prerequisites completed, provide their full-time efforts to their position and having no intent to remain employed for the term of their employment. *(ECF 19-4; ECF No. 21 pp. 2-8 ¶5-28 and pp. 18-26).* See *Chrysler International Corp. v. Cherokee Export Co.,* 134 F3d 738, 742 (1998); *Baith v. Knapp-Stiles, Inc.,* 156 N.W.2d 575, *579 (1968)* Plaintiffs' actions not only breached the parties' contracts but placed Defendant's reputation and patients' health at risk by submitting fraudulent medical records and certifying patient nursing visits that did not occur. *(ECF Nos. 19-4; 19-12; 19-14; 19-14; 19-15; 19-16; 19-17; 19-18; 19-19; 19-20; 19-21; 19-22; 19-42; 19-51)* Plaintiffs had unclean hands and ulterior motives in accepting the positions with Defendant in exchange for receipt of green cards. Thus, even if Plaintiffs were able to meet their burden of proof relative to their breach of contract claims, they should not recover in equity.

Additionally, Plaintiffs breach of contract claims fail as Plaintiffs have not established sufficient evidence that they were damaged or injured as a result of any alleged breach. It is uncontested that prior to working for Defendant, Plaintiffs were earning between *$7,104-9,600 annually* working forty hours per week in the Philippines and tried for years to get green cards to permanently work in the US;

which Defendant's sponsorship provided. (*ECF No. 21, SJ Brief p. 21 FN 13; ECF No. 23 p. 10 ¶14; ECF No. 19-3, Unson Dep. pp. 21, 82, 91-92; ECF No. 19-8, Delizo Dep. pp. 193*). Therefore, Plaintiffs are in a better position now than they were prior to their employment with Defendant; while Defendant invested in employees who failed to provide adequate benefit to the company.

Lastly, Plaintiffs failed to mitigate their damages, as set forth in Defendant's brief; which went unaddressed by Plaintiffs in its response to this motion. This included declining job offers that paid hourly in excess of what Plaintiffs Agreements provided immediately upon notification of the "breach." *(ECF No. 21, SJ Brief p. 29 FN 57; ECF No. 19-3 pp. 39-40,71-74, 185-187, 406-407, 439; ECF No. 19-8 pp. 47-49; 52-57; ECF No. 19-9 pp. 205-208, 299-300)* Plaintiffs all testified they found full time employment as nurses immediately when looking for it but did not do so for 6-12 months after they allege they found out about the method of compensation. Therefore, Plaintiffs are not entitled to damages on their breach of contract claims where they should have mitigated their damages immediately.

Based on the foregoing, a reasonable jury cannot find in favor of Plaintiffs relative to its breach of contract claims; therefore, "a trial would be useless" and Defendant is entitled to summary judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) citing *Anderson Infra.* at 249.

### C. PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT

Plaintiff argues Defendant either did not raise and/or that there are questions of fact concerning their promissory estoppel and unjust enrichment claims. However, Plaintiffs allege the parties had an express contract covering compensation in this matter; thus, these claims are untenable. (ECF No. 23 p. 8 ¶5) See *Cloverdale Equip. Co. Infra. At 939.* Moreover, Plaintiffs acted in bad faith with unclean hands and should not recover based in equity. *(See ECF No. 21 18-34; ECF No. 19-4)*

Under Michigan law, the elements of an unjust enrichment claim are "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Wysong Corp. v Ml. Indus.,* 412 F. Supp. 2d 612, 624-25 (ED Mich., 2005) *quoting Dumas v. Auto Club Ins. Ass'n,* 437 Mich. 521, 546 (1991). Here, Defendant did not reap the full benefit of Plaintiffs' nursing services where Plaintiffs did not meet performance metrics or give their full professional efforts after incurring over two years of financial expense successfully sponsoring green cards for Plaintiffs. *(ECF 21 pp.22-35; ECF No. 19-4)* Given the above, Plaintiffs will be unable to establish a prima facia case of Unjust Enrichment in this matter.

A promissory estoppel claim consists of three elements: (1) a promise; (2) that the promisor reasonably should have expected to induce action by the promisee; (3) and which produces detrimental reliance or forbearance by the promisee. *APJ Assocs., Inc. v. North Am Philips Corp.,* 317 F3d 610, 617 (6th Cir.2003). Plaintiffs will be unable to prove the

elements of Unjust Enrichment or Promissory Estoppel based on the evidence set forth; especially where Defendant sponsored green cards which enable them to work and live in the US permanently which they attempted for years without success. *(ECF No. 21 SJ Brief pp. 18-34, FN 10; See §I above; ECF No. 19-3 pp. 21, 51-52; ECF No. 23 p. 10 ¶18)*

Plaintiffs reliance on their own conflicting deposition testimony and declarations are illustrative of the deficiencies of their claims. *(See §I above; ECF No. 19-4)* Defendant requests this Honorable Court order sanctions against Plaintiffs for submitting declarations in bad faith, pursuant to *Fed. R. Civ. P. 56(h)* as set forth herein.

It is clear from the foregoing that Plaintiffs' evidence is insufficient to establish essential elements of Plaintiffs' Unjust Enrichment, Promissory Estoppel, Breach of Contract and FLSA claims as set forth in Defendants' Briefs; thus, a trial would be useless and Defendant is entitled to summary judgment as a matter of law.

WHEREFORE, Defendant respectfully requests this Honorable Court grant Defendant's Motion for Summary Judgment in its entirety as to all Plaintiffs' claims and order the prayers for relief as set forth in its Summary Judgment Brief.

Dated: February 28, 2020

Respectfully Submitted,
/s/Danielle Safran
Danielle B. Safran (P61965)
30300 Northwestern Hwy, Suite 337
Farmington Hills, MI 48334

**CERTIFICATION UNDER E.D. MICH. LR 5.1(a):**
I, Danielle B. Safran, hereby certify that this document complies with Local Rule 5.1 (a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10 ½ characters per inch (non-proportional fonts) or 14 point (proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3). /s/Danielle Safran

**PROOF OF SERVICE**
I certify that on February 28, 2020, I filed the foregoing paper with the Clerk of the Court using the ECF system, which will electronically send notification to all counsel of record. /s/Danielle Safran
Danielle Safran