UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMIN C. DELIZO, et al.

               Plaintiffs,                       Case No. 19-10237

vs.                                      HON. MARK A. GOLDSMITH

ABILITY WORKS REHAB
SERVICES, LLC,

               Defendant.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 21)**

Plaintiffs Jasmin Delizo, Erlinda Samaniego, and Alain Unson are registered nurses formerly employed by Defendant Ability Works Rehab Services, a company that contracts with healthcare agencies to provide medical services for homebound patients. Plaintiffs sued Ability Works, alleging violations of the Fair Labor Standards Act ("FLSA") for failing to compensate Plaintiffs for overtime wages and training time. They also brought state law claims arising out of an alleged breach of their employment agreement. Ability Works contests these claims and has raised its own counterclaims under state contract law (Dkt. 15).

For Ability Works to be liable for overtime wages, Plaintiffs' employment as nurses must fall under the purview of the FLSA's overtime provisions, 29 U.S.C. § 207. Ability Works moved for summary judgment on this issue, arguing that Plaintiffs are exempt from § 207 and, therefore, not eligible to earn overtime wages. As for the failure to pay for training time, Ability Works does not categorically dispute that it owed payment for this activity, which is generally compensable for all employees if the employers require the training. Rather, Ability Works argues it had good

1

reason for failing to pay Plaintiffs for the time they allege they should have been paid.  For the reasons discussed below, each of these arguments fails.

Ability Works fares no better in its request for summary judgment on Plaintiffs' contract claims or its own counterclaims for breach of contract.  Its arguments on these points are either conclusory or untimely.

Because Ability Works has not met its summary judgment burden as to any claim, the motion is denied in full.

## I.  BACKGROUND

Ability Works provides nursing, physical therapy, and occupational therapy professionals to home healthcare agencies with which they contract.  Khatri Dep., Ex. 7 to Mot. at 27 (Dkt. 19-9).[1]  The process operates as follows.  An agency reaches out to Ability Works to refer a homebound patient.  Khatri Dep. at 28.  Once a referral is made, Ability Works contacts its employees to determine if any are available to accept the job.  Id.  Ability Works' employees may then decide if they will accept or reject the job.  Id.  The employees retain control over their own schedules but are encouraged to meet a "productivity standard" of seeing thirty-two to thirty-five patients per week.  Id. at 154.  Employees are assigned to various geographic regions around eastern Michigan, so the patient's location is a factor in an employee's decision whether to accept a job, as well as the patient's specific needs and the employee's schedule.  Id. at 28.  Once an employee accepts a job, the employee schedules an initial patient visit, also known as a "start of care" visit.  Id. at 89.  After the initial visit, the employee is responsible for scheduling follow-up visits, or "revisits," with the patient and managing the patient's ongoing treatment plan.  Id. at 100.

---

[1] Hitesh Khatri is a co-owner of Ability Works.  Answer ¶ 6 (Dkt. 5).

All three Plaintiffs signed three-year employment contracts with Ability Works and, after undergoing the required training, began conducting patient visits at various times throughout 2018. Compl. ¶¶ 19, 20, 22 (Dkt. 1).  The patient visits required Plaintiffs to diagnose and treat illnesses, perform routine lab and screening tests, take vital signs, draw blood, and insert intravenous fluids. Delizo Dep., Ex. 3 to Mot. at 174, 230-231 (Dkt. 19-3).  Plaintiffs were paid a predetermined flat fee for each initial patient visit they conducted and a slightly lesser fee for each follow-up visit, regardless of how long the visits took them to complete.  Resp. at 2 (Dkt. 23).  The fee payments included compensation for all duties connected with the actual visits themselves, including drive time and administrative tasks such as completing paperwork, scheduling patients, and speaking with physicians, health care agencies, or supervisors.  Mot. at 22 (Dkt. 21).  At separate times during 2019, and before their contracts expired, Plaintiffs resigned from Ability Works, citing various grounds for dissatisfaction with the company.  Pls. Resig. Ltrs., Exs. 8, 28, 31 to Mot. (Dkts. 19-10, 19-30, 19-33).  They subsequently filed this lawsuit asserting the following claims: (1) violation of the FLSA; (2) breach of contract; (3) quantum meruit/unjust enrichment; and (4) promissory estoppel.  Ability Works filed a counterclaim alleging that Plaintiffs breached their employment agreements (Dkt. 15), followed by a motion for summary judgment, which is now before the Court.

## II.  STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[F]acts must be

3

viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

As explained fully below, for an employee to be considered exempt from the overtime provisions of the FLSA, the employer must show that the employee is paid a minimum weekly salary, as specified in the applicable regulation.  29 C.F.R. § 541.605(a).  Here, Ability Works fails to make that showing.  Therefore, Ability Works has not met its summary judgment burden of proving exemption as a matter of law.

As for the training issue, Ability Works admits that Plaintiffs completed some required training, but it argues it has valid reasons for not paying Plaintiffs.  Ability Works' reasons are not justified by Plaintiffs' employment contracts or by the FLSA, so this argument fails.

Finally, Ability Works does not address Plaintiffs' contract claims, except in a cursory fashion, insufficient for an award of summary judgment.  Accordingly, it is not entitled to summary judgment on those claims.

### A. Exemption under the FLSA

The FLSA requires employers to pay overtime to employees who work more than forty hours a week.  29 U.S.C. § 207.  Some employees, however, are exempt from the overtime requirement under 29 U.S.C. § 213.  Because a plaintiff's status as an exempt employee is an affirmative defense, the employer bears the burden to prove exemption.  Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc., 204 F.3d 673, 676 (6th Cir. 2000).  Exemptions, however, are to be narrowly construed against the employers seeking to assert them.  Id.

4

Section 213(a)(1) exempts workers employed in a bona fide professional capacity, which requires the employer to show two things: (1) that the employee's compensation meets the statutory minimum wage threshold, also known as the "salary basis" requirement, and (2) that the employee's primary work related duties require knowledge of an advanced type in a field of science or learning, also known as the "primary duties" requirement. 29 C.F.R. § 541.300. Here, the parties agree that Plaintiffs, as registered nurses, meet the "primary duties" requirement satisfying the second prong. Id.; Resp. at 19. The parties disagree on the first prong. Because Ability Works has failed to show that Plaintiffs' compensation meets the statutory minimum wage threshold, summary judgment in its favor is not appropriate.

Plaintiffs were paid a predetermined flat fee for each visit they completed. Resp. at 2. This is known as payment made on a "fee basis." 29 C.F.R. § 541.605(a). An employee is paid on a fee basis when that employee receives a fixed sum for a single job regardless of the time required for its completion. Id. An employer can potentially satisfy the salary basis requirement while paying its employees on a fee basis. See Fazekas, 204 F.3d at 676 (holding that nurses, who were paid various agreed-upon sums for each home care visit regardless of time spent on each visit, were employed on a fee basis and engaged in bona fide professional capacity, so as to be exempt from FLSA overtime requirements).

To determine whether an individual paid on a fee basis is exempt, the fee payment is converted by a two-step calculation to allow a comparison to the minimum salary that would qualify a salaried employee as exempt. 3 Emp. Coord. Compensation § 3:23. First, the amount paid to an employee is divided by the amount of time worked on the job; second, that number is multiplied by forty hours per week. Id.; see 29 C.F.R. § 541.605(b). Once that number is

calculated, it can be compared to the statutory minimum wage threshold that would apply to salaried employees.  Here, the statutory minimum wage threshold was $455 per week.[2]

To illustrate this rule, the regulations set forth the following example: "[A]n artist paid $250 for a picture that took 20 hours to complete meets the minimum salary requirement for exemption since earnings at this rate would yield the artist $500 if 40 hours were worked."  Id. Accordingly, the question is not whether Plaintiffs earned $455 per week, nor whether Plaintiffs worked forty hours per week; rather, the question is whether Plaintiffs would have earned at least $455 per week if they had worked exactly 40 hours per week.  Because one of the inputs to this formula is the amount of time spent on a job, the calculation requires an accurate determination of the time actually spent on it.  See Rindfleisch v. Gentiva Health Servs., Inc., 962 F. Supp. 2d 1310, 1320 (N.D. Ga. 2013) ("The statue provides that "[t]he adequacy of a fee payment . . . can ordinarily be determined only after the time worked on the job has been determined.") (emphasis in original).

One complicating factor in this case is that the employees were paid at different rates for initial and follow-up visits, making it difficult to determine how much an employee would have earned in a forty-hour week consisting of an indeterminate mix of initial and follow-up visits. Ability Works attempts to overcome this complication by arguing that the fee rates for both types of jobs are sufficient to render its employees exempt.  With the right set of facts, this approach would be entirely reasonable.  A hypothetical may help.  Suppose an Ability Works employee spends three hours on each initial job and two hours on each follow-up job.  The employee earns $55.00 for each initial job she completes, so working for three hours yields a weekly rate of

---

[2] The statute was amended to reflect a higher compensation threshold in January 2020.  The higher compensation does not apply to Plaintiffs retroactively.  See Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 369 (7th Cir. 2005).

$733.33, well above the weekly minimum of $455.00.  Similarly, an employee earns $40.00 for each follow-up job she completes, so if she spends two hours on each follow-up job, her weekly rate would be $800.  Thus, at all times the employee would be working on tasks that paid above the minimum threshold, and a forty-hour week would necessarily pay more than $455.  Under such circumstances, the hypothetical employee would be an exempt professional.

Ability Works sets forth a rendition of the above example and argues there is no dispute that all Plaintiffs would have earned $455.00 per week had they worked a forty-hour week.  Mot. at 23.  However, the calculations are difficult to follow and unsupported by indisputable facts.  Id.

There are several problems with Ability Works' computation.  Id.  For one thing, it lumps testimony from all three Plaintiffs to make one fee-basis calculation.  Id.  Plaintiffs all testified differently regarding time spent on the job, so a one-size-fits-all computation is not appropriate.  A few examples of the specific errors follow.  Ability Works argues that it took all three Plaintiffs "2.86 hours" to complete an initial job and "1.62 hours" to complete a follow-up job.  Id.  To reach this conclusion, Ability Works assumed it took all Plaintiffs forty-five minutes to conduct a follow-up visit.  Id.  However, only Delizo testified to that estimate.  Delizo Dep. at 192.  Samaniego testified it took her anywhere from forty-five minutes to an hour and a half (Samaniego Dep. at 168), and Unson testified that it took him one hour.  Unson Dep. at 253.  Additionally, Ability Works assumed it took Plaintiffs fifteen minutes to drive to a patient, but only Unson made that assertion.  Id. at 226.  Delizo testified that she spent anywhere from ten to thirty minutes driving between patients located in the same city, but she could not give an estimate for how long it took her to travel to a patient located further away.  Delizo  Dep. at 213, 216.  Samaniego testified that she typically spent between two and a half and three hours per day driving to and from patients, but because the number of patients she saw varied daily, it is difficult to determine how long she

typically spent driving to a single visit.  Samaniego Dep. at 196.  Given the wide disparity in Plaintiffs' testimony, one calculation does not answer the highly fact-intensive question of how many hours each Plaintiff spent on the job and whether each Plaintiff would earn the threshold compensation per week.

Next, Plaintiffs' testimony was too indefinite to support an accurate calculation.  Plaintiffs often testified that the time they spent per task varied widely depending on patient circumstances.  As a result, they could not always produce a precise number of hours worked on a single task.  See, e.g., Samaniego Dep. at 168, 171- 173, 175; Delizo Dep. at 192-194, 213, 216; Unson Dep. at 197, 241, 245-255.  In other words, Plaintiffs' testimony did not always elicit a numerical answer that Ability Works could simply plug into its computation.  Therefore, there is reason to question the computation's accuracy.

Finally, Ability Works uses irrelevant testimony in the computation. Ability Works suggests that it took all Plaintiffs thirty minutes to complete paperwork after a follow-up visit, citing Delizo's deposition transcript.  Mot. at 23.  However, Delizo testified that it took her thirty minutes to complete paperwork when she worked for Medcore Home Healthcare, not Ability Works.  Delizo Dep. at 41.  She was not able to give a straightforward answer when asked the same question in the context of her job at Ability Works.  Id. at 192.  Because Ability Works' computation is based on data not applicable to our case, it is irrelevant to the analysis and cannot be considered.

Ability Works' exhibits also do not aid in the analysis.  In order to be paid, Plaintiffs submitted a timesheet to Ability Works each week called a "patient signature log."  Mot. at 13.  The patient signature log reflects the number of patients Plaintiffs saw and how long they spent with each patient.  Id.  Plaintiffs testified that the hours they logged only reflect how long they

were physically in the home with each patient—they do not include hours spent on other duties like drive time and paperwork.  Unson Dep. at 123; Delizo Dep. at 249-250; Samaniego Dep. at 191-192.  Because time spent on patient-facing work alone does not encompass the totality of time spent on the job, the patient signature logs are not determinative of Plaintiffs' exemption.

Ability Works also submitted Plaintiffs' pay stubs.  Pls. Earnings Stmts., Exs. 42, 43, 44 to Mot. (Dkts. 19-44, 19-45, 19-46).  The pay stubs show that during some weeks, Plaintiffs earned at least $455.00 based on the number of patient visits conducted—for other weeks, they did not. Id.  However, the proper inquiry is not whether Plaintiffs earned at least $455.00 on any given week based on the number of visits, but whether Plaintiffs would have earned $455.00 per week if they had worked a forty-hour week.  See 29 C.F.R. § 541.605(b).  Though the pay stubs show how many patient visits Plaintiffs were paid for during a given payment period, they do not instruct how long each visit took, the key question before the Court.

Khatri testified as to how long he believed Plaintiffs should have been spending on the job based on "industry standards."  Khatri Dep. at 89.  He said that a nurse typically spends "about an hour at the patient home for the start of care" and "thirty to forty-five minutes max for revisits." Id.  This includes time spent on paperwork, which Khatri says happens throughout the visit as the nurse is assessing and talking to the patient.  Id. at 92-93.  When asked about how long an entire visit (follow-up or initial) might take, including drive time and administrative tasks, Khatri could not give an answer.  Id. at 118.  However, estimates and standards that may or may not reflect Plaintiffs' actual working hours are not helpful in determining the true number of hours Plaintiffs worked per visit.  See Rindfleisch, 962 F. Supp. 2d at 1320.  Rather, Ability Works must produce the time each Plaintiff actually spent on the job.  Id.

In sum, Ability Works has not put forth the requisite "clear and affirmative evidence" that each Plaintiff meets "every requirement of an exemption."  Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 501 (6th Cir. 2007).  The evidence submitted does not establish, as a matter of law, how many hours each Plaintiff spent on the job.  Accordingly, Ability Works has not met its summary judgment burden of proving Plaintiffs are exempt employees under the FLSA.[3]

**B. Compensation for Training Time**

Plaintiffs also claim that they were not paid for time spent in mandatory training before they started conducting patient visits.  Compl. ¶ 24.  Time spent attending training required by an employer is normally considered compensable hours of work.  29 C.F.R. § 553.226(b); Chao v. Tradesmen Int'l, Inc., 310 F.3d 904, 907 (6th Cir. 2002).

Both parties agree that Plaintiffs engaged in required training, but the number of hours Plaintiffs should be compensated for is contested.  Mot. at 7-9.  Plaintiffs claim the entire training process took a total of eight weeks, with occasional breaks for personal errands.  Unson Dep. at 101-102; Delizo Dep. at 71-73; Samaniego Dep. at 73.  Ability Works counters that Plaintiffs' personal errands were far from occasional, and instead accounted for most of the time Plaintiffs say they were "training."  Mot. at 9.  Ability Works argues that training should have only taken Plaintiffs four days to complete.  Id.  Khatri testified that Plaintiffs' training consisted of watching one twelve to fourteen-hour video showing Plaintiffs how to conduct an at-home visit, one four-hour video that provided an overview on homecare, and one day of shadowing a current nurse

---

[3] Ability Works also asks the Court to find that Ability Works' violation of the FLSA was not willful, as is required to avoid liquidated damages.  Mot. at 24.  However, because at this point there has been no finding of an FLSA violation, this request is premature.

employee.  Khatri Dep. at 146.  He estimated that it usually takes an employee four and a half days to complete if done without interruption.  Id.

Without timesheets or records, the Court only has competing testimony on which to determine time spent in training.  Therefore, there is a question of fact about the number of hours Plaintiffs participated in required training, precluding summary judgment in favor of Ability Works on this issue.

Nevertheless, Ability Works provides two arguments supporting the claim that it does not owe Plaintiffs any compensation for training.  First, it says that Ability Works' employees are only paid for training after successfully completing a "probationary period."  Mot. at 9.  Because Plaintiffs did not complete this prerequisite, Ability Works argues they are not entitled to any compensation for training.  Id.  However, there is no exception in the statute—or Plaintiffs' employment contracts—that permits non-payment for this reason.  See 29 C.F.R. § 553.226(b).  This argument is without merit.

Second, Khatri testified that Ability Works routinely pays employees for training time but that it may not have paid Plaintiffs because they failed to submit timesheets for those hours.  Khatri Dep. at 148.  However, it is the employer's responsibility to keep an accurate record of all hours worked, and the employer's failure to do so does not relieve it of the obligation to pay its employees.  See 29 C.F.R. § 516.2.  Therefore, Ability Works may not use this reason to avoid paying Plaintiffs.

### C.  Contract Claims

Ability Works does not address, except in a cursory way,  Plaintiffs' claims for breach of contract, quantum meruit/unjust enrichment, and promissory estoppel (together, "the contract claims").  Rather, Ability Works makes a conclusory statement that because Plaintiffs breached

their contracts, any contract claims against Ability Works are rendered moot.  Mot. at 24.  Ability Works appears to be referring to the principle that one party's substantial breach of a contract may relieve the other party of its obligation to perform under the contract.  See Alpha Capital Management, Inc. v. Rentenbach, 792 N.W.2d 344, 360-361 (Mich. Ct. App. 2010).  The Michigan Supreme Court has stated that in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party.  McCarty v. Mercury Metalcraft Co., 127 N.W. 2d 340, 343 (Mich. 1964) (citations omitted).  If Ability Works was released from its contractual duties as a result of Plaintiffs' breach, the argument would go, Plaintiffs could not sue on these grounds.

However, Ability Works does not provide any developed argument with respect to the contract claims, only a terse mention.  See Mot. at 24-25.  Ability Works does not attempt to set forth which party breached first or why Plaintiffs' breach was substantial.  Nor does it attempt to apply the relevant contract law to the facts.  In fact, Ability Works does not cite any contract law in its brief.   The Court need not consider arguments raised in a perfunctory manner, unaccompanied by some effort at developed argumentation.  Sunseri v. Proctor, 461 F. Supp. 2d 551, 573 (E.D. Mich. 2006); Neff v. City of E. Lansing, 724 F. App'x 448, 450 n.4 (6th Cir. 2018) (where plaintiff failed to address argument in anything beyond cursory statements, she forfeited the corresponding claims).  Therefore, the Court will not address Ability Works' argument with respect to the contract claims.

Ability Works also asks the Court to grant it judgment as a matter of law on its contract law counterclaims, "in the event it holds Plaintiffs to be nonexempt."  Mot. at 25.  First, this Court

is not holding that Plaintiffs are nonexempt under the FLSA; rather, the holding is that there is a genuine issue of material fact that precludes summary judgment on this issue.  Second, this argument fails for the same reason that Ability Works' argument failed with respect to Plaintiffs' contract claims.  Ability Works provides nothing more than a one-sentence argument requesting relief.  This is plainly insufficient.  See Sunseri, 461 F. Supp. at 573; Neff, 724 F. App'x at 451 n.4.  Thus, the Court declines to address the argument on the merits.

In addition, while Ability Works does present a brief argument in its reply, Reply at 13 (Dkt. 28), this comes too late.  Any argument not made in the moving party's opening brief is waived as a basis for summary judgment.  See Logan v. Allstate Ins. Co., No. 13-CV-10028, 2013 WL 8338107, at *3 (E.D. Mich. May 10, 2013) (Goldsmith, J.) (quoting Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010)) ("arguments made to us for the first time in a reply brief are waived").  Therefore, summary judgment is denied as to the contract claims.

## IV.   CONCLUSION

For the reasons set forth above, Ability Works' motion for summary judgment is denied (Dkt. 21).[4]

SO ORDERED.

Dated:  July 9, 2020                                        s/Mark A. Goldsmith
     Detroit, Michigan                          MARK A. GOLDSMITH
                                                United States District Judge

---

[4] Previous versions of the motion (Dkts. 17, 19), revised by the instant motion (Dkt. 21), are dismissed as moot.